HAGEARTY, McDONOUGH & KEEFE, ATTORNEYS AND COMMISSIONERS OF THE SUPERIOR COURT EX REL. BARTHOLOMEW MULLINS

*vs.*

WILLIAM H. DONNING ET ALS.

Superior Court        Hartford County        File No. 60065

MEMORANDUM FILED JANUARY 21, 1941.

*Hagearty, McDonough & Keefe,* of New Britain, for the Plaintiff.

*Francis A. Pallotti,* Attorney General, and *Nicholas F. Rago,* Assistant Attorney General, for the Defendants.

QUINLAN, J.   An agreed statement of facts covering 46 pages of legal cap paper and consisting of 61 paragraphs, supplemented by several days of testimony in court, makes apparent the impracticability and futility of an extended statement of fact in this trial memorandum.   It is unfortunate that all the facts could not be agreed so as to permit of a reservaton for review in the Supreme Court of Errors of a question that can give future opportunity for destroying the effectiveness of our State merit system.   As Mr. Marsh, former personnel director, expressed it: "If some one deliberately wanted to make 'ducks and drakes' of the merit system and proceeded in bad faith to abolish positions and create new classes in their place, it would certainly have that result."

Shorn of many quotations of the statute law, and unnecessary facts as indicated, however helpful such might be to the understanding of a layman, the question involved here arose as follows:

When section 617c of the 1935 Supplement to the General Statutes, providing for semi-annual examination of automobiles, was enacted, 125 positions under the title "Motor Vehicle

Inspector" were set up, and the relator on March 6, 1936, became such an inspector without examination.

On May 12, 1937, the Merit System Act came into being (Supp. [1939] §§640e-703e) and by this Act employees holding positions in the classified service of the State on May 12, 1937, retained their positions automatically and were thereafter subject to the provisions of the chapter. (Sec. 649e) While there were contained in the classification four separate titles and statement of duties, to wit: (1) Motor Vehicle Traffic Inspector; (2) Motor Vehicle Inspector; (3) Motor Vehicle Service Inspector; (4) Gasoline Station Inspector; in fact Motor Vehicle Inspectors performed duties in all classifications, except that possibly of gasoline station inspector.

At this time the semi-annual inspection division was being financed entirely by the fees received for the inspection of cars. Due to legislation in this regard between 1937 and 1939 difficulties regarding funds and appropriations arose.

On or about March 12, 1939, there being no funds, a number of employees had their services terminated and their names were placed on a reemployment list.

Early in 1939 there was also doubt as to the value of the lanes and a study was made by the Highway Safety Commissioner, which recommended the restoration of ·the lanes and that new inspectors be employed on the basis of open competitive examinations. Provision had been made by the Legislature of 1937 for a study of the classification and compensation in the classified service and such a report was made. Sec. 650e of the 1939 Supplement to the ·General Statutes empowers the Personnel Director to abolish, divide, combine and otherwise modify existing classes of positions, and while the Personnel Department had proceeded to re-classify, it reached the Motor Vehicle Department earlier than it otherwise would, because of the decision to restore automobile inspection lanes. A new classification combined the four existing titles, which classification was approved by the Motor Vehicle Commissioner, the Advisory Personnel Committee, the Commissioner of Finance and Control and the Governor. The facts in this paragraph are emphasized because of the suggestion that it was a colorable re-classification actuated by political motives.

Examinations were conducted and the relator failed to qualify. While an appeal was taken to the Advisory Per-

sonnel Committee there seems to be some doubt if such an appeal can be pursued under section 702e of the 1939 Supplement to the General Statutes, wherein it is provided: "Any person holding a position in the classified service who shall be demoted, suspended, fined or dismissed, shall have the right of appeal to the personnel advisory committee, and the decision of said committee shall be final. An employee dismissed for the reason of economy or lack of work may appeal only on the ground that the order of dismissal has not been determined by the service ratings of employees, as required in section 678e."

The decision of the case becomes only as narrow and apparently unjust as the law governing the situation made it possible for the directing authorities to accomplish what was done.

While the controversy over the *continuance* of the lanes may have had political aspects, can it be successfully said that the political implications at the time of the discontinuance of the lanes involved the *personnel* of the inspectors? If that aspect crept into the picture before the re-classification was made, it was a secondary consideration and not revealed in the evidence. A close examination of the statute law on the merit system in this State affords no help to an aggrieved party.

In the first place the relator was only on the reemployment list. He was not an *incumbent*. An incumbent is defined to be:

"A person who is in present possession of an office; one who is legally authorized to discharge the duties of an office. 31 C.J. 409.

"In common parlance, it signifies one who is in possession of an office; as, the present incumbent. One does not become the incumbent of an office, until legally authorized to discharge its duties, by receiving his commission and taking the official oath." *Bouvier's Law Dict. (Baldwin's Century Ed.).*

The word "incumbent" is not defined in section 641e, entitled "Definitions", but that it had the above meaning is evidenced by the use of the word in section 642e, which defines the exemptions from classified service.

Were he an incumbent I disagree with Mr. Marsh's state-

ment that he ought not be certified. But the relator was not an incumbent. He was in the same relative status as one who had passed an examination and was placed on the *employment* list. No one on such a list could question the right to re-classify even if his classification were abolished. The law it-self so provides (§656e). And so far as the *reemployment* list is concerned it is provided, in section 666e, that a person eligible for the reemployment list shall have his name "placed on the reemployment list *for the appropriate class* for which he shall have qualified for future reemployment when vacancies in the *class* shall occur" (italics added).

It is true that *incumbents* in the three classifications other than Motor Vehicle Inspectors are still engaged under the original titles. It is true also that the men now engaged in the inspection lanes are doing substantially identical work under the new classification as did the relator under his title of Motor Vehicle Inspector, certainly so far as the work in the lanes is concerned.

But the salary levels and the qualifications have been changed and the titles have been combined, under an authority given to effectuate such a change, while the relator was out of a *position* (defined by §641e as meaning "any office or position of employment in the state service") and not an incumbent. The notice of dismissal to the relator under date of March 13, 1939, gave advice that he was "entitled to be placed on a reemployment list for the same classification" from which he had been dropped.

That classification no longer exists and is therefore inap-propriate. The manner in which the change was achieved may have been close to tenuous technicality but the fact is that a series of events preceded the re-classification and that re-classification, approved as it was by so many officials, would require impugning the integrity of too many men in office to upset it. Had the dismissal been followed by immediate re-classification in point of time suspicion might be justly excited.

The return is found to be true and sufficient and judgment is ordered for the defendants to recover their costs.